## EOFF v. PACE.
### No. 639.

Court of Civil Appeals of Texas. Eastland.
Feb. 7, 1930.
Rehearing Denied March 7, 1930.

Thomas & Shapard, of Anson, for appellant.
Sayles & Sayles, of Abilene, for appellee.

HICKMAN, C. J.

This litigation had its origin in an application filed in the county court in behalf of Mrs. Mary Eoff, surviving widow of George Eoff, deceased, for a yearly allowance in the sum of $4,800. The facts are undisputed, and, so far as necessary to an understanding of the questions here decided, are as follows:

George Eoff died intestate on April 16, 1928, leaving surviving him his widow, Mary Eoff, and adult children and children of deceased children by a former marriage. No children were born to George Eoff and Mary Eoff, and none of the children of George Eoff who survived him were minors. John Eoff is the duly appointed, qualified, and acting administrator of the estate of his father, George Eoff, deceased, and the administration is one proceeding of both the separate property of George Eoff and the community property of George Eoff and his surviving widow, Mary Eoff.

J. C. Pace is the duly appointed, qualified, and acting receiver of Mary Eoff and of her property, and, as such receiver, is duly authorized to act in all matters involved herein. Mary Eoff is eighty-four years of age, and is a helpless, bedridden invalid. At the time of the death of her husband she had no property other than her interest in the community estate of herself and her deceased husband, all of which property is in the possession and under the control of John Eoff as administrator. Her interest in the community property of herself and her deceased husband was of the net value of $20,000. The separate property of George Eoff had a value of more than $30,000.

Pace, as receiver, filed his application in the county court for an allowance of $4,800,

for the support of the surviving widow during the first year after the death of her husband, as provided in articles 3476 et seq., being title 54, c. 16, R. S. 1925. The administrator answered the application resisting same on the following grounds:

(1) That Mary Eoff was not entitled to the year's allowance prayed for, for the reason that she had separate property sufficient for her maintenance; (2) in the event the court should hold that she was entitled to said allowance, then the estate of George Eoff, deceased, was solvent, and any allowance made to the receiver for the support of the widow should be charged against her individual part of the estate; and (3) that, in the event the widow was entitled to an allowance, the amount prayed for by the receiver was excessive, in that it was more than sufficient in amount for her maintenance for one year after the death of her husband.

The application was denied in the county court, but advancements were ordered by the administrator to the receiver in the amount of $3,000 to take care of the necessities of the widow, same to be charged against her portion of the community estate. An appeal to the district court followed, and, after a hearing, that court found that the widow was entitled to an allowance sufficient for her maintenance for one year from the date of the death of her husband, which amount was fixed at $3,941.56. This amount was credited with the $3,000 advancement theretofore made under orders of the county court, and the administrator was directed to pay to the receiver, out of the community estate, the sum of $941.56. The order of the county court was set aside. The court then decreed that the sum of $3,941.56 should not be charged to the widow as an advancement against her interest in the separate estate of George Eoff, deceased, or against her half of the net community estate after the payment of said allowance, and after the payment of such costs of administration and debts as were chargeable against such community estate. It was further decreed that, in the final partition and distribution of the community estate of George Eoff, deceased, and his surviving wife, Mary Eoff, such community estate should be charged with: "(a) said allowance in the sum of $3,941.56, (b) such community estate's part of the costs of administration, and (c) the debts chargeable against such community estate, and one-half the remainder of such community estate shall be delivered to the said Mary Eoff, her legal representative or her heirs." From this judgment an appeal has been perfected to this court by the administrator.

■ The subject of allowances for the support of the widow and minor children of a deceased husband and father is treated in chapter 16, tit. 54, R. C. S. 1925, comprising articles 3476 to 3484, inclusive. The follow-ing chapter, comprising articles 3485 to 3501, inclusive, treats of the subject of setting apart the homestead and other exempt property, or allowances in lieu thereof, to the widow and children. These two chapters were originally a part of the same act, and relate to closely allied subjects. They are in pari materia, and, in determining the questions presented by this appeal, we shall consider them together.

■ The first question of law presented is whether the term "separate property," as used in article 3478, was intended to include the widow's interest in the community. It is provided in article 3478 that "no such allowance shall be made for the widow when she has separate property adequate to her maintenance." The contention is made that the term "separate property" includes the widow's interest in the community estate, and that, as a condition precedent to her right to any allowance for support for one year after the death of her husband, she must allege in her application, and establish as a fact to the county court, that, after the payment of all debts with which the community is chargeable, there will not remain of the community estate, over and above the exemptions and allowances in lieu thereof, sufficient property for her support for one year. To our minds this contention is untenable, and runs counter to the spirit and purpose of the statutes. There is nothing in the language of this article which indicates to our minds that the Legislature intended to give to the term "separate property" any meaning other than its constitutional and statutory meaning. When a husband dies, leaving debts chargeable to the community estate, it is sometimes impossible to determine at once and in advance whether the estate will prove to be solvent or insolvent. These statutes withdraw from the custody of the court and the control of the administrator an amount sufficient for the widow's maintenance during one year after the death of her husband, and thus protect her from want during this period, while she is adjusting herself to the changed conditions of her life. It should be paid promptly when the necessity therefor exists, and should not, we think, be held up pending a final determination as to the net value of her interest in the community.

■ In the instant case the amount required for the widow's support during the first year of her widowhood was not an issuable fact. On account of the widow's invalid condition, the constant services of nurses and doctors were required, bringing the total amount actually expended for her support during this first year of her widowhood to $3,941.56. It having been shown that, under orders of the county court, advancements totaling $3,000 had theretofore been made to the receiver in behalf of the widow, we think the district court properly and correctly ordered the ad-

ministrator to pay the receiver the amount of $941.56 to bring the total amount paid on this account up to the total expenses for the year.

■ A determination satisfactory to our minds of the question of whether the allowance should be charged to the widow's one-half of the community, and be taken into account in the final distribution of the estate when, as in this case, the estate is solvent, has required a careful investigation of the history of this legislation.

Article 3494 provided that: "Should the estate, upon final settlement, prove to be insolvent, the title of the widow and children to all the property and allowances set apart or paid to them, under the provisions of this and of the preceding chapter, shall be absolute, and shall not be taken for any of the debts of the estate except as hereinafter provided." This language is plain and needs no construction, and, were the estate insolvent, it would not be questioned that the title of the widow to this allowance would be absolute, even as against the adult children of the deceased.

Article 3493 reads as follows: "If, upon a final settlement of such estate, it shall appear that the same is solvent, the exempted property, except the homestead, which has been set apart to the widow or children or both, together with any allowance that has been received by them in lieu thereof, shall be subject to partition and distribution among the heirs and distributees of such estate in like manner as the other property of the estate." It will be observed that this article makes no provision whatever as to the allowance for one year's support, but governs only as to the distribution of exempted personal property and allowances in lieu thereof, providing that such property and allowances shall be subject to partition and distribution among the heirs and distributees of the estate in like manner as other property thereof. These two articles, standing alone, without any reference to their history, would seem to present a question of some doubt as to the title to an allowance made for a widow and minor children, as between such widow and minor children and the adult children or other heirs or distributees of the estate. But, when the history of the legislation is considered, we think all questions as to the construction thereof disappear.

Prior to the adoption of the Constitution of 1876 it was held by our Supreme Court that, in insolvent estates, the widow and minor children took an absolute title to the homestead, to the exclusion of the adult heirs. Horn v. Arnold, 52 Tex. 161. The Constitution of 1876, art. 16, § 52, provided that the homestead should descend and vest in like manner as other real property of the deceased. It is said in Zwernemann v. Von

Rosenburg, 76 Tex. 522, 13 S.W. 485, that this section of the Constitution was probably enacted to prevent a repetition of the legislation that would have the effect of preferring a widow and minor children over adult children in the distribution of the homestead of an insolvent estate. The inclusion of the section above referred to in the Constitution clearly evidenced an intention by the framers thereof, and the voters who adopted same, to prevent any discrimination, as between the heirs of a deceased, in so far as the title to the homestead was concerned. Zwernemann v. Von Rosenburg, supra. The Constitution made no provision with reference to the distribution of exempt personal property, allowances in lieu thereof, or allowances for a year's support. But it is significant that the Legislature of 1876, which convened about two months after the adoption of the Constitution, made an important change in the statutes relative to the distribution among the heirs of the deceased of allowances made to the widow and minor children. The provisions of the statute on this subject, prior to 1876, will be found in article 1305 of Paschal's Annotated Digest. This article contains the following provision: "Provided, that, if the estate of such decedent be not insolvent, nothing in this section contained, shall be so construed as to prohibit the distribution and partition of said estate among the heirs and distributees thereof, including the portion herein provided, to be set aside for the use of the widow and children; *and, further provided, that a year's provision shall be exempted from such distribution.*" (Italics ours.)

■ The legislative act of 1876 was a very comprehensive act regulating the proceedings in the county court pertaining to estates of deceased persons. It consisted of 155 sections, and comprised chapter 84, pages 93 to 131, of the Acts of the Legislature 1876, Gammel's Laws, vol. 8, pp. 929, 967. Section 57 of this act (Gammel's Laws, vol. 8, p. 942) is practically in the same language as article 1305, Paschal's Annotated Digest, except that the provision above italicized was omitted therefrom. The provision in the act of 1876 with reference to the distribution of a solvent estate, in so far as the question under consideration here is concerned, has never been materially changed and is substantially the same as article 3493, R. S. 1925. The act of 1876 covered the whole subject-matter of the administration of estates of deceased persons, and provided that all laws and parts of laws in conflict therewith were repealed. By a well-established rule of construction, the omitted provision was annulled.

In 36 Cyc. pp. 1080–1081, the rule is stated in this language: "Where a statute is revised, some parts of the original act being omitted, the parts which are omitted cannot be revived by construction, but are to be consid-

ered as annulled, provided it clearly appears to have been the intention of the legislature to cover the whole subject by the revision." This rule was cited with approval by our Supreme Court, speaking through Chief Justice Cureton, in the case of American Indemnity Company v. City of Austin, 112 Tex. 239, 246 S. W. 1019. The same rule, in substance, had been theretofore declared and followed by the Supreme Court of our state in many cases. Bryan v. Sundberg, 5 Tex. 418; Stirman v. State, 21 Tex. 734; Turnstall v. Wormley, 54 Tex. 476; State of Texas v. Travis County, 85 Tex. 437, 21 S. W. 1029; Schley v. Hale, 1 White & W. Civ. Cas., Ct. App. § 933.

The annulment by the Legislature of the provision which exempted a year's provision from distribution when the estate was solvent clearly evidenced a legislative intent to change the law so as to provide that such allowance should not be exempted in the distribution of such an estate, and this act of the Legislature, together with the article of the Constitution above referred to, clearly evidence that it was not the purpose and intention of our lawmakers or framers of the Constitution that the statutory provisions protecting widows and minor children from creditors of the estate should have the effect of preferring one heir over another, or have the effect of preferring the widow over the children, but that the intent and purpose was to protect the widow and minors from the creditors, leaving unimpaired the laws of descent and distribution.

The provision of article 3494, R. S. 1925, to the effect that, when the estate is insolvent, the title of the widow and children to all personal property set apart to them as exemptions, allowances in lieu thereof, and for a year's support, shall be absolute, seems to have appeared in the statutes for the first time in the revision of 1879. Article 2002, R. S. 1879. The act of 1876 annulled, as noted, the prior provision of the statutes that allowances for support for one year were exempt from partition and distribution in a solvent estate, but was silent as to the rule in an insolvent estate. The addition of his article in 1879 adds emphasis to the conclusion that, as to personal property exemptions, allowances in lieu thereof, and allowances for one year's support, the title of the widow and minors is absolute, as against the other heirs, only when the estate is insolvent. This article does not have the effect of preferring minor heirs or the widow over other heirs, but only makes effective the protection of the widow and minors as against creditors. If these allowances and exemptions of personal property were distributed to adult children and other heirs, they would immediately be subject to the payment of debts, and such adult children, or other heirs, would not, as a practical proposition, receive any benefits from such distribution. The exemptions and allowances to the widow and minors would be lessened by the amount distributed to the other heirs, without conferring any corresponding benefits upon such other heirs, but only upon the creditors. To prevent this result, the title to such property is made absolute in those to whom it is set apart or allowed in the case of an insolvent estate.

Article 3483, R. S. 1925, is likewise in harmony with the rule above announced. That article provides that the allowance made for the support of the widow and minor children shall be paid in preference to all other debts or charges against the estate, except the expenses of the funeral and last sickness of the deceased. So far as the creditors are concerned, this allowance is a charge against the entire estate. But to classify it as a preferred claim against the estate does not have the effect of classifying it above the distributive shares of heirs, in whom title to a portion of the estate has theretofore vested.

By the provisions of article 2578, R. S. 1925, upon the death of George Eoff, one-half of all the community property of whatsoever nature, belonging to the community estate of himself and his wife, Mary Eoff, passed immediately to his children. There were a few debts owing by deceased, and an administrator was appointed for the purpose of paying those debts. Had there been no debts, and therefore no administration, the one-half interest of the heirs would not have been charged with liability for one-half the support of the widow for a year. To charge their interest therewith when an administrator is appointed would have the effect of modifying article 2578 and applying one rule of descent and distribution when a solvent estate owes debts and another rule when it is free of debts. A construction leading to that result should be avoided. It gives the statutes under consideration the effect of changing article 2578 by implication, and therein violates a well-established rule of construction.

We think all of the articles of the statute contained in the two chapters under construction are in harmony with the conclusions here reached. This construction gives effect to the statutes of descent and distribution, prevents discrimination between children, accomplishes the beneficent purposes of the statutes, and, we think, clearly effectuates the legislative intent.

It is, therefore, our order that the judgment of the district court, in so far as it directed the administrator to pay the receiver $941.56, be affirmed, and that said judgment, in so far as it directed the administrator to charge the allowance of $3,941.56 to the community estate as a whole, and not to regard same as a part of the community in the final distribution thereof, be set aside, and judgment here rendered that such allowance shall be charged exclusively to the widow's one-half interest in the community.

Affirmed in part, and reversed and rendered in part.

### On Motion for Rehearing.

In his motion for rehearing appellee presents a hypothetical case, wherein the allowance for one year's support to the surviving widow exceeded her one-half interest in the community estate. The hypothetical case was one in which there were no minor children, but only a surviving widow and adult children. It is then pointed out that, under our holding, the widow, upon final distribution, would be indebted to the adult children to the amount which her allowance exceeded one-half the value of the community estate. We are not called on to determine this particular question, because we have not that state of facts before us, but, assuming that our decision would have that effect, does that fact condemn it? We think not. This is not a case of equity. The only rights to any allowance at all are derived from the statutes, and the fact that, in the application of those statutes a rare case might arise wherein those entitled to the allowance may be liable to the other heirs of the estate for an accounting as to a portion thereof could not operate to change the statutory construction. The fact that she receives any allowance at all is because of the statutes. And, under the statutes, she would be entitled to no allowance, except in a case where there was a debt justifying an administration. To make her title to the allowance absolute when an indebtedness exists and the estate is solvent would be, in effect, to hold that the fact of the existence of a debt operates to modify the laws of descent and distribution.

That the laws of descent and distribution were not repealed or intended to be repealed by the Legislature by the statutes under construction is further supported and emphasized by the provisions of article 3484, R. S. 1925. This article is in chapter 16, the one dealing with allowances to the widow and minor children. It is there provided that, if there be both widow and minor child or children, the widow shall be entitled to one-half of the allowance and the minor child or children to the other one-half. Suppose a man dies, leaving a solvent community estate charged with certain debts, and leaving surviving him a widow and several minor children. The amount required for the support of these children for a year would greatly exceed the amount required for the support of the widow. But this article recognizes the property rights of each, and provides that the widow shall receive one-half of the allowance. Whatever sum may be paid to the minors under this statute as an allowance for one year's support must be offset by the payment of an equal sum to the widow, notwithstanding her necessities may not require the payment of that amount. That provision, it seems to us, is almost conclusive of the legislative intent not to change, by implication, the positive statutes of descent and distribution and thereby divest certain heirs of their title to property and vest same in other heirs.

We believe that a correct judgment has been rendered in this cause in this court, and the motion for rehearing will be overruuled.